# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8201 | **DATE** | 9/27/2002 |
| **CASE TITLE** | Cortez, et al. vs. Calumet Public School District #132, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of state defendants to dismiss [6-1] is denied. Status hearing is set for 10/21/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 30 2002 | 28 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | WB | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/27/2002 | |
| | | 02 SEP 27 PM 3:41 | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 3 0 2002

| | |
|---|---|
| CHRISTIAN CORTEZ, by his mother, Marta Cortez, as next friend; CRISTO JAVIER ARGUELLEO, by his mother, Margarita de la Torre as next friend; EDGAR BRAVO, by his mother, Irma Bravo, as next friend; ANA ANAYA, by her mother, Maria Anaya, as next friend; NORMA ANAYA, by her mother, Maria Anaya, as next friend; TERESITA SANCHEZ, by her father, Silverio Sanchez, as next friend; FELICIANO HURTADO, by his father, Feliciano Hurtado, as next friend; DAVID HURTADO, by his father, Feliciano Hurtado, as next friend; MARIA HURTADO, by her father, Feliciano Hurtado, as next friend; JESUS AHUMADA, by his father, Luis Ahumada, as next friend; LUIS AHUMADA, by his father, Luis Ahumada, as next friend; NORIS YANES, by her mother, Noris Yanes, as next friend; MARIANA ESPARZA, by her father, Horacio Esparza, as next friend,<br><br>Plaintiffs,<br><br>vs.<br><br>CALUMET PUBLIC SCHOOL DISTRICT # 132; JEROME ROBERTS, Superintendent of Calumet Public School District #132, in his official capacity; CYNETHA JOHNSON, KRISSY CANNON, KAREN IVEY, WILLIAM CONNORS, NATASHA WASHINGTON ROSS, ERNESTINE ROBINSON and STEPHANIE SEGREST-STUCKEY, members of the Board of Education of Calumet Public School District # 132, all in their official capacity; GLENN W. McGEE, Superintendent of the Illinois State Board of Education; and RONALD J. GIDWITZ, MARILYN McCONACHIE, CONNIE ROGERS, VINCENT J. SERRITELLA, MARJORIE B. BRANCH, | No. 01 C 8201<br>Judge Joan H. Lefkow |



| JANET STEINER, and BEV TURKAL, | ) |
| members of the Illinois State Board of | ) |
| Education, all in their official capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Latino students attending school in Calumet Public School District # 132 (the "School District"), filed this putative class action against Glenn W. McGee, Superintendent of the Illinois State Board of Education ("ISBE"); and Ronald J. Gidwitz, Marilyn McConachie, Connie Rogers, Vincent J. Serritella, Marjorie B. Branch, Janet Steiner, and Bev Turkal, members of the ISBE, all in their official capacity (collectively "state defendants") alleging that the state defendants violated the Equal Education Opportunities Act ("EEOA"), 20 U.S.C. §§ 1701 *et seq.*[1] Before the court is the state defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6). For the reasons set forth below, the court denies the motion.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46

---

[1] Plaintiffs also bring claims against the Calumet Public School District, the Superintendent of the Calumet Public School District and the members of the Board of Education of the School District under 42 U.S.C. § 1983, 42 U.S.C. § 2000(d), and 20 U.S.C. § 1703(f). This motion to dismiss does not concern these "Calumet defendants," thus, they will be discussed only where necessary.

2

(1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on motions to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## BACKGROUND

Plaintiffs, Latino students with limited English proficiency ("LEP"),[2] presently attend Burr Oak Academy, Burr Oak Elementary or Calumet Elementary School located within the School District. By and through their parents, plaintiffs bring this action individually and on behalf of a putative class of other present and future similarly situated Latino students. (Compl. ¶ 5.)

According to plaintiffs, for several years parents of Latino LEP students in the School District contacted school administrators and the School District's Board of Education attempting to resolve the deficiencies in the School District's bilingual education programs. (Amd. Compl. ¶ 49.) After these attempts to resolve the matter at the local level were unsuccessful, the parents filed complaints with the ISBE and the United States Department of Education, Office of Civil Rights ("OCR").[3] (*Id.*)

---

[2]LEP students are students either (1) not born in the United States whose native language is other than English and are incapable of performing ordinary classwork in English, or (2) were born in the United States of parents possessing no or limited English-speaking ability and are incapable of performing ordinary classwork in English. 105 ILCS 5/14C-2(d).

[3]OCR conducted its own investigation and found that the School District's failure to inform and involve parents through communication in their native language violated federal law. Consequently, OCR issued a Corrective Action Agreement establishing a time line of compliance for the School District (Amd. Compl. ¶ 52). According to plaintiffs, the School District has not yet complied with the Corrective Action Agreement (Amd. Compl. ¶ 53).

3

Responding to the parents' complaints, the ISBE conducted a compliance review of the School District in March 2000, finding that the school district was not in compliance with state requirements for transitional bilingual education programs. (Amd. Compl. ¶ 50.) Plaintiffs allege that the state defendants provide and administer federal and state funding for local school districts and have the power to deny a school district's claim for funding. If a school district is found to be non-compliant with the bilingual education requirements, the state defendants have the power to place a school district on probation when it "fails or refuses to serve students according to relevant legal and/or regulatory requirements" and "prolongs or repeats instances of non-compliance to a degree that indicates an intention not to comply." Ill. Admin. Code. 23, § 1.20(b)(3)(D) and (E). Plaintiffs also point out that a school or district that fails to correct its deficiencies within the time set forth in its plan may be "nonrecognized" by the ISBE, at which point the school or district would be ineligible to file any claim upon the common school fund or collect tuition from another school district. (Amd. Compl. ¶ 57.) The ISBE threatened to cut district funding, and the School District responded initially by not applying for funds for its bilingual program for the 2000-2001 school year. Despite ISBE's threats, the district has continually failed to implement an appropriate transitional bilingual program. (Amd. Compl. ¶ 51.)

Plaintiffs allege that despite the School District's failure to correct the deficiencies in its transitional bilingual education program, the state defendants have not yet declared the School District "nonrecognized" or ineligible to file a claim upon the common school fund as they are empowered to do under state law. (Amd. Compl. ¶ 58.) Plaintiffs argue that the state defendants have failed to take "appropriate action" to enforce the statutory and regulatory requirements of

4

the Illinois Transitional Bilingual Education Program, and as a result, plaintiffs have been denied equal access to educational opportunities in violation of the EEOA, 20 U.S.C. § 1703(f).

## DISCUSSION

Under the EEOA, a state is prohibited from denying equal educational opportunities to an individual "on account of his or her race, color, sex, or national origin, by—(f) the failure of an educational agency to take *appropriate action* to overcome the language barriers that impede equal participation by its students in its instructional programs."[4] 20 U.S.C. § 1703(f) (emphasis added). Plaintiffs allege that because the state defendants have failed to enforce the Illinois Transitional Bilingual Education Program's statutory and regulatory requirements against the School District, the state defendants have not taken "appropriate action" as the EEOA requires. Specifically, plaintiffs argue that the state defendants have not taken "appropriate action" because they have not found the School District to be "nonrecognized" and thus ineligible to file a claim on the common school fund despite the School District's continued deficiencies in transitional bilingual education programs.

The state defendants argue that this claim cannot survive a motion to dismiss because: (1) the court lacks subject matter jurisdiction to compel a state agency to adhere to state law; (2) the plaintiffs lack standing to compel the state defendants to enforce the regulations; (3) the state defendants have not violated federal law; (4) the plaintiffs have not pled the appropriate standard to hold the state defendants liable; (5) Congress' use of the term "appropriate action"

---

[4]The term "educational agency" as used in the EEOA includes both local school boards and the state board of education. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1042-43 (7th Cir. 1987); *Idaho Migrant Council et al., v. Bd. of Educ. et al.*, 647 F.2d 69, 71 (9th Cir. 1981).

5

confers discretionary authority on the state defendants; and (6) *res judicata* bars plaintiffs from suing the ISBE.

A.  **Subject Matter Jurisdiction**

The state defendants argue that this court lacks subject matter jurisdiction to compel a state agency to adhere to state law. The state defendants cite to *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984), where the Supreme Court prohibited federal courts from ordering injunctive relief against state officials based on state law. *Id.* at 106. The Court held that a federal court compelling a state official to adhere to state law would "conflict directly with the principles of federalism that underlie the Eleventh Amendment." *Id.*

The state defendants' reliance on *Pennhurst* is unavailing because plaintiffs' claim alleges violation of a federal statute, not violation of a state statute. *See Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1036 (7th Cir. 1987) ("the plaintiffs' position is not that they could hold the defendants liable under Illinois law, but rather that they have been injured by the defendants' failure to implement that state enactment to the extent required by federal law. *Pennhurst*, therefore, is not controlling."). Plaintiffs ask this court to declare that the state defendants' actions are not "appropriate action" under the EEOA. Because plaintiffs rely on federal law, their claim is distinguishable from *Pennhurst* and not grounds to dismiss the complaint under Rule 12(b)(1). As such, the state defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

B.  **Plaintiffs' Standing to Compel the State Defendants to Enforce State Regulations**

The state defendants argue that plaintiffs lack standing to bring this action. To establish standing, a plaintiff must show (1) injury in fact, meaning an invasion of a legally protected

interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendants' actions; and (3) that a favorable decision is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The state defendants focus on the second and third prongs of the *Lujan* standing requirements, arguing that the failure to take punitive enforcement action against the School District has not caused plaintiffs injuries nor will punitive enforcement likely redress any injury.

1.  *Causal connection between the injury and the conduct complained of*

The state defendants argue that there is no causal connection between their not placing the School District on the "nonrecognized" list and plaintiffs' injury. "Although standing is not necessarily lost because of the weakness of the causal connection, a nexus sufficiently strong between the plaintiffs' injury and the defendant's putatively illegal conduct must be present to assure this court that granting relief will personally benefit the plaintiffs." *Banks v. Sec'y of Indiana Family and Soc. Serv. Admin.*, 997 F.2d 231, 239 (7th Cir. 1993) (internal citations omitted).

In *Lujan*, the Court explained that where a plaintiff's injury arises from a governmental entity's alleged unlawful regulation (or lack of regulation) of someone else, as in this case, "causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction–and perhaps on the response of others as well." *Id.* at 561-62. The Seventh Circuit applied this standard in *Banks*.

In *Banks*, the plaintiff brought suit against the Secretary of the Indiana Family and Social Services Administration ("Indiana Secretary") and the Secretary of the United States Department

of Health and Human Services ("U.S. Secretary"), alleging that the Indiana Secretary failed to provide her with timely written notice of denial of a Medicaid claim for reimbursement. *Id.* at 235. Plaintiff argued that this failure to give notice violated the Fourteenth Amendment's Equal Protection and Due Process Clauses. *Id.* The claim against the U.S. Secretary stemmed from plaintiff's allegation that the U.S. Secretary violated plaintiff's right to receive Medicaid benefits by failing to enforce federal regulations that plaintiff asserted required the Indiana Secretary to provide notice and an opportunity to contest denial of a Medicaid claim for reimbursement. *Id.* at 238.

Relying on *Lujan,* the Seventh Circuit reversed the lower court's finding that plaintiff lacked standing to sue the U.S. Secretary. In determining that plaintiff established an injury that arose from the U.S. Secretary's unlawful regulation of someone else, the court concluded that plaintiff, an intended beneficiary of regulations that arguably required states to give notice to Medicaid recipients, was adversely affected "by the [U.S.] Secretary's alleged failure to require state compliance with the regulations and, as a result, with the requirements of the Medicaid Act." *Id.* at 240.

The state defendants attempt to distinguish *Banks* on grounds that in *Banks,* the U.S. Secretary approved Indiana's Medicaid plan despite the "absence of a requirement that recipients receive notice and a hearing when their providers' claims are denied by the state." *Id.* The state defendants argue that in this case, they have not approved nor do they condone the local defendants' actions. The court finds this argument unpersuasive. The U.S. Secretary's approval of the Indiana Secretary's plan in *Banks* was not essential to the finding that the plaintiff had standing. Instead, the court focused on the fact that the Secretary's failure to require state

8

compliance with the regulations adversely affected the plaintiff, one of the intended beneficiaries. Similarly, in the instant case, plaintiffs, intended beneficiaries of the Illinois Transitional Education Program, were adversely affected by the ISBE's failure to require compliance with the state regulations. The court believes this sufficient to show causal connection between plaintiffs' injury and the conduct complained of.

2. *Favorable decision is likely to redress the injury*

With regard to redressability, the state defendants argue that even if action were taken against the School District, it is speculative whether such action would result in the School District coming into compliance with the state bilingual education requirements. The court in *Banks* found that the U.S. Secretary had the power to "withhold or limit federal contributions to a state whose plan is not in compliance with the requirements of the Medicaid Act or that fails to administer an approved plan in accordance with the Act." *Id.* The court noted also the U.S. Secretary's intention to "withhold funds if [a] state plan does not comply with the [Medicaid] statute or if there is 'noncompliance in practice.'" *Id.*

Here, the state defendants have the power to place the School District on nonrecognized status, resulting in the School District being ineligible to file any claim upon the common school fund. *See Gomez*, 811 F.2d at 1043 ("the [ISBE] and the Superintendent are vested with the authority under state law to supervise the local districts and to enforce state regulations."). The court believes this power to be sufficient for redressability, as the injury is "likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The state defendants' motion to dismiss for lack of standing is therefore denied.

9

## C.  State Defendants' Violation of Federal Law

The state defendants next assert that they have not violated federal law because they have taken appropriate action to remedy the situation in the School District. Defendants point out, and plaintiffs admit, that the state defendants have taken some steps to remedy the situation in the School District. The state defendants assert that the court should defer to the expert knowledge of the educators, who may not wish to implement the remedy of "non-recognition" of the School District, which would result in measures that "[punish] the innocent as well as the guilty."

Clearly, a state board of education can be held liable under the EEOA for not taking "appropriate action." Accepting plaintiffs' well-pleaded allegations as true and drawing all reasonable inferences in the plaintiffs' favor, a claim upon which relief can be granted exists based on the plaintiffs' allegations that the state defendants failed to properly supervise the School District, that the School District was clearly unwilling to comply with federal and state law requirements, and that the state defendants' enforcement efforts were lax. As such, the state defendants' motion to dismiss on this ground is denied.

## D.  Appropriate Pleading Standard

The state defendants next argue that because the EEOA does not define "appropriate action," the court should examine other cases where federal courts have determined that a school district or municipality becomes liable in damages for failure to enforce regulations against third parties. *See Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (holding that school district must be deliberately indifferent under Title IX to be liable for teacher-student sexual harassment); *Canton v. Harris*, 489 U.S. 378 (1989) (holding that municipality is liable for failure to train under 42 U.S.C. § 1983 only when deliberately indifferent). After examining

these cases, the state defendants assert that a school board must be deliberately indifferent before being held liable for the acts of third parties. According to the state defendants, because this standard has not been pled, the complaint should be dismissed.

This argument is unavailing. The cases that the state defendants point to were not brought under the EEOA. The EEOA provides that no state shall discriminate against an individual by the failure of an educational agency to take "appropriate action" to overcome language barriers that impede equal participation by students. 20 U.S.C. § 1703(f). All that the plaintiffs are required to plead is that the state defendants did not take "appropriate action." The plaintiffs are not required to plead a deliberate indifference standard. Therefore, the state defendants' motion to dismiss for plaintiffs' failure to plead deliberate indifference is denied.

### E. Appropriate Action and Discretionary Authority

The state defendants next assert that Congress' use of the term "appropriate action" in the EEOA confers discretionary authority on the state defendants. The state defendants cite *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985), for the proposition that an agency's decision not to exercise its enforcement authority is committed to its absolute discretion.

The Seventh Circuit in *Gomez* grappled with the issue of deference given to state and local education authorities under the EEOA, recognizing that "[t]he term 'appropriate action' used . . . indicates that the federal legislature did not mandate a specific program for language instruction, but rather conferred substantial latitude on state and local educational authorities in choosing their programs to meet the obligations imposed by federal law." *Gomez*, 811 F.2d at 1040. While state and local educators were entitled to substantial deference, the court further reasoned that "[t]he duty remains [on the courts] to interpret and enforce congressional

enactments, and [courts] cannot accord such sweeping deference to state and local agencies that judicial review becomes in practice judicial abdication." *Id.* at 1041. The *Gomez* court concluded that courts should "review a state's implementation of § 1703(f) in a manner similar to that which [courts] employ in reviewing an administrative agency's interpretation and implementation of a legislative mandate." *Id.*

The court set out a three-step framework. First, courts should "examine carefully the evidence of record regarding the soundness of the educational theory or principles upon which the challenged program is based." *Id.* Second, courts "must determine whether the programs actually used by a school system are reasonably calculated to implement effectively the educational theory adopted by the system." *Id.* at 1041-42. Finally, courts must decide if the school's program "although ostensibly premised on a legitimate educational theory and adequately implemented initially, fails, after a period of time sufficient to give the plan a legitimate trial, to obtain results that would indicate that the language barriers confronting students are actually being overcome." *Id.* at 1042. With regard to the final step, the court explicitly noted that "[j]udicial deference to the school system is unwarranted if over a certain period the system has failed to make substantial progress in correcting the language deficiencies of its students." *Id.*

The state defendants argue that they have implemented appropriate regulations, established guidelines, monitored the LEP program at the School District, and have placed the School District on probation. Any further punitive measures, according to the state defendants, should be committed to the ISBE's absolute discretion.

12

Although the court should give the state defendants deference for their decision not to implement more stringent punishment against the School District, *Gomez* recognizes that at some point this deference is no longer warranted. Plaintiffs have alleged that they have complained to the ISBE, and that no progress has been made to correct the deficiencies in the school programs over a period of time. Throughout this time, plaintiffs allege, they have been without access to transitional bilingual education programs. Therefore, the ISBE's decision not to punish the School District more stringently may not be "appropriate action" because of the failure to make substantial progress in correcting the School District's deficiencies. As such, the state defendants' motion to dismiss based on its discretionary authority is denied.

F.  *Res Judicata*

Finally, the state defendants argue that *res judicata* bars plaintiffs' claims against them. The state defendants rely on a 1988 class settlement agreement from the *Gomez* case involving the ISBE. The class in that settlement consisted of "Spanish speaking children who are or will be enrolled in Illinois Public Schools, or who are eligible or will be eligible to be enrolled in Illinois Public Schools."[5] (St. Def. Mot. to Dis. Ex. A.) In paragraph 11, the settlement agreement states that "[e]ach party hereto waives the right to assert that any claim, demand or provision has been through oversight or error omitted from the terms and conditions set forth in the Settlement Agreement." The state defendants argue that because they have complied with the settlement agreement's terms, plaintiffs are barred from claiming that the state defendants owe them greater duties than those which were set forth in the settlement agreement.

---

[5]The court considers the settlement agreement, attached to the state defendants' motion to dismiss, only because it is a public record. *See Henson* v. *CSC Credit Serv.*, 29 F.3d 280, 284 (7th Cir. 1994).

*Res judicata*, or claim preclusion, bars the litigation of a claim decided on the merits in a previous suit that included the same parties or their privies. *Bethesda Lutheran Home & Serv., Inc. v. Born*, 238 F.3d 853, 857 (7th Cir. 2001). Three elements are required for *res judicata* to bar a suit: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 177 (7th Cir. 1995).

The court concludes that *res judicata* does not bar the plaintiffs here because the claim in this case does not have "identity" with the previous cause of action. Identity exists where there is a "single core of operative facts giving rise to a remedy." *Id.*, citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 913 (7th Cir. 1993). The cause of action must "be based on the same facts and raise the same issues as the [previous] cause of action." *Id.* at 177-78. In the *Gomez* settlement, the class alleged that the failure of the ISBE and the Superintendent to promulgate uniform and consistent guidelines for identification, placement and training of LEP students violated the rights of the class under the EEOA. In the instant case, the plaintiffs allege not that the state defendants failed to promulgate uniform and consistent guidelines, but that the state defendants have failed to enforce the statutory and regulatory requirements of the Illinois Transitional Bilingual Program against the School District. The court finds that this is not based on the same facts and does not raise the same issues. Therefore, the state defendants' motion to dismiss due to *res judicata* is denied.

## CONCLUSION

For the reasons stated above, the court denies the state defendants' motion to dismiss [#6]. A status hearing is set for October 21, 2002 at 9:30 a.m. In the meantime, the parties are directed to meet in a sincere effort to resolve this case short of trial.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 27, 2002